IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VALERIE ANN HOWLAND,                              No.  3:14-cv-01437-HZ

                    Plaintiff,

        v.

CAROLYN W. COLVIN, Acting                        OPINION & ORDER
Commissioner of Social Security,

                    Defendant.


Valerie Ann Howland
18960 N.W. Aurora
Portland, Oregon 97229

        Plaintiff Pro Se

Billy J. Williams
INTERIM UNITED STATES ATTORNEY
District of Oregon


1 - OPINION & ORDER

Janice E. Hebert
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Jordan D. Goddard
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S/ 221A
Seattle, Washington 98104-7075

     Attorneys for Defendant

HERNANDEZ, District Judge:

     Plaintiff Valerie Howland brings this action seeking judicial review of the

Commissioner's final decision to deny disability insurance benefits (DIB).  This Court has

jurisdiction pursuant to 42 U.S.C. § 405(g).  I affirm the Commissioner's decision.

## PROCEDURAL BACKGROUND

     Plaintiff applied for DIB on January 13, 2011, alleging an onset date of December 15,

2009.  Tr. 210-16.  Her application was denied initially and on reconsideration.  Tr. 73-83, 96-99

(initial determination), 84-95, 108-10 (reconsideration).

     On February 13, 2013, Plaintiff appeared, with counsel, for a hearing before an

Administrative Law Judge (ALJ).  Tr. 52-72.  On March 6, 2013, the ALJ found Plaintiff not

disabled.  Tr. 32-51.  The Appeals Council denied review.  Tr. 15-20.

## FACTUAL BACKGROUND

     Plaintiff alleges disability based on panic attacks, spine fracture, numb right knee, left

knee "bursis damage," migraines, sharp hip pain causing falls, temporomandibular joint disorder

(TMJ), and left leg numbness.  Tr. 231.  At the time of the hearing, she was sixty-three years old.

2 - OPINION & ORDER

Tr. 210 (showing date of birth).  She is a high school graduate, has one year of college, was

trained as a travel agent, and has past relevant work experience as a travel agent and childcare

provider.  Tr. 232.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can be

expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§

423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure.  See Valentine v.

Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step

procedure to determine disability).   The claimant bears the ultimate burden of proving disability.

Id.

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity."  If so, the claimant is not disabled.  Bowen v. Yuckert, 482 U.S.

137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner

determines whether the claimant has a "medically severe impairment or combination of

impairments."  Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the

claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in

combination, meet or equal "one of a number of listed impairments that the [Commissioner]

acknowledges are so severe as to preclude substantial gainful activity."  Yuckert, 482 U.S. at

141; 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed

3 - OPINION & ORDER

disabled; if not, the Commissioner proceeds to step four.  <u>Yuckert</u>, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work."  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can, the claimant is not disabled.  If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.  In step five, the Commissioner must establish that the claimant can perform other work.  <u>Yuckert</u>, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  Tr. 37.  Next, at steps two and three, the ALJ determined that Plaintiff has severe impairments of grade I spondylolisthesis at the L4-5 level, early degenerative changes in the bilateral knees with mild patellar tendinosis on the right, bilateral trochanteric bursitis, left greater than right, and obesity, but that the impairments did not meet or equal, either singly or in combination, a listed impairment.  <u>Id.</u>

At step four, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she should never climb ladders, ropes, or scaffolds.  Tr. 41.  With this RFC, the ALJ determined that Plaintiff is able to perform her past relevant work as a travel agent.  Tr. 46.  Thus, the ALJ determined that Plaintiff is not disabled.  <u>Id.</u>

/ / /

4 - OPINION & ORDER

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." Vasquez, 572 F.3d at 591 (internal quotation marks and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

DISCUSSION

Plaintiff contends that the ALJ erred by failing to find her anxiety a severe impairment at step two and by concluding that she can perform her past relevant travel agent work. She argues that when these errors are corrected, she is disabled at step five under the Medical-Vocational Guidelines.

I. Step-Two Finding

The ALJ considers the severity of the claimant's impairment(s) at step two. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement, or a combination of impairments that is

severe and meets the duration requirement, the claimant is not disabled.  Id.

A severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).  "Basic work activities" are the abilities and aptitudes necessary to do most jobs, including physical functions such as walking, standing, sitting, and lifting, and mental functions such as understanding, carrying out, and remembering simple instructions.  20 C.F.R. § 404.1521(b).  In Social Security Ruling (SSR) 85-28 (available at 1985 WL 56856, at *3), the Commissioner explains that "an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities[;]"  see also SSR 96-3p (available at 1996 WL 374181, at *1) ("an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.").

The Ninth Circuit has explained that the severity determination at step two is expressed "in terms of what is 'not severe.'"  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  The ALJ is required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity.  Id.  "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims."  Id. (citing Yuckert, 482 U.S. at 153-54).

As noted above, at step two the ALJ found that Plaintiff suffered from several physical severe impairments but that Plaintiff's alleged mental impairments were not severe.  Plaintiff challenges the ALJ's finding only as to her alleged anxiety disorder.  The ALJ found the anxiety disorder to be medically determinable.  Tr. 39.  But, he further found that the "record does not support a finding that this impairment has caused or can be expected to cause more than minimal functional limitations for a continuous period of at least 12 months."  Id.; see also Tr. 38

6 - OPINION & ORDER

("claimant's medically determinable mental impairment of anxiety disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere.").

The ALJ noted that Plaintiff had not been treated for any mental symptoms and that she declined a mental health evaluation in March 2010.  Tr. 39.  The ALJ further found that there were no clinical findings in support of a severe mental impairment.  Id.  The ALJ noted that at an August 2011 consultative examination with psychologist Gary Sacks, Ph.D., Plaintiff "described her physical problems in extreme terms, but she smiled and made good eye contact."  Id. (citing Tr. 377-80).  The examination showed logical thought process and the mini mental status exam revealed grossly intact cognitive function, with intact short-term memory, intact attention and concentration, intact ability to follow a three-step command, and intact abstraction ability on proverb interpretation.  Id.

The ALJ gave found Dr. Sacks's Global Assessment of Functioning score (GAF score) of 58 to have little probative value.  Id.  He explained that the score gave no specific functional limitations and it was inconsistent with Plaintiff's normal mental status exam.  Id.  The ALJ also noted that Dr. Sacks had stated that it would be necessary to review medical records to determine the vocational ramifications of Plaintiff's physical capabilities and that Dr. Sacks had not rendered a specific mental RFC assessment.  Tr. 39-40.

The ALJ gave the State agency findings significant weight.  Tr. 39.  He noted that (1) state agency psychologist Megan Nicoloff, Psy.D., found Plaintiff's mental impairment to be nonsevere; (2) state agency psychologist Sandra Lundblad, Psy.D., noted that Plaintiff's anxiety symptoms did not satisfy the criteria for post-traumatic stress disorder; and (3) state agency

psychiatric consultant Eugene Fierman, M.D., agreed with that assessment. Id. (citing Tr. 73-81; 84-93; 387-88). The ALJ explained that these assessments were consistent with Plaintiff's normal mental status exam and with the record as a whole which reflected no treatment for mental symptoms. Id.

The ALJ also discussed the four mental disorder functional areas known as the "paragraph B criteria." Tr. 40. He found that Plaintiff had mild limitation in activities of daily living, no limitations in social functioning, no limitations in concentration, persistence, or pace, and had experienced no episodes of extended duration decompensation. Id. Later, in rendering her RFC, the ALJ found Plaintiff's subjective symptom allegations to be not entirely credible. Tr. 42-46. Plaintiff does not challenge that finding.

Plaintiff argues that the ALJ's finding that her anxiety disorder is not severe, is "contradicted by the plentiful and objective medical evidence in the record." Pl.'s Op. Brief at 4. More specifically, she contends that the ALJ misstated Dr. Sacks's opinion, failed to consider the opinions of her treating and examining doctors, and improperly relied on the evaluations of the non-examining agency psychologists.

First, as to Dr. Sacks's opinion, Plaintiff represents that the ALJ found her anxiety impairment nonsevere because Dr. Sacks gave no specific mental RFC assessment. She notes that Dr. Sacks diagnosed her with "psychological factors affecting physical condition" and assessed her with a GAF score of 58 which she states indicates moderate symptoms in areas such as social functioning. She further argues that Dr. Sacks's entire assessment of her mental impairments is inconsistent with the ALJ's determination that she has only mild restrictions in her activities of daily living and no limitations in social functioning or in concentration,

persistence, or pace.

Plaintiff misreads the ALJ's opinion. The ALJ did not reject Dr. Sacks's opinion simply because Dr. Sacks gave no mental RFC assessment. Instead, in addition to the lack of such an assessment, the ALJ relied on Plaintiff's performance on the mental status examination, the fact that Plaintiff had no mental health treatment, and that the GAF score of 58 was inconsistent with the normal mental status examination. He also noted that the GAF score itself carries no specific functional limitations.

As Defendant points out, a diagnosis itself does not establish any particular limitations. Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990). Additionally, while Dr. Sacks was asked to evaluate Plaintiff's PTSD, the only "diagnosis" he provided was a vague impression that she had "psychological factors affecting her physical condition." Tr. 380 (noting further that while she reported startling and suffering psychological arousal when presented with a specific trigger of her automobile accident, she described no other signs of PTSD). This diagnosis reveals nothing about whether Plaintiff's mental health condition affected her mental ability to perform basic work activities. Instead, it suggests that her mental health was possibly affecting her physical condition. And even as to that, Dr. Sacks noted that her medical records would have to be reviewed to determine the "vocational ramifications of her physical capabilities." Id. The ALJ did not err in finding that Dr. Sacks's diagnostic impression did not establish that Plaintiff had a severe mental impairment.

As to the GAF score, the current Fifth Edition of the Diagnostic and Statistical Manual of Mental Disorders no longer includes a GAF scale for "several reasons," including "its lack of conceptual clarity" and "questionable psychometrics in routine practice." Am. Psych. Ass'n,

9 - OPINION & ORDER

<u>Diagnostic & Statistical Manual of Mental Disorders</u> 16 (5th ed. 2013) (DSM).  However, at the time Dr. Sacks issued his assessment, the then-controlling DSM edition provided that a GAF score of 58 suggested "moderate symptoms," such as "flat affect and circumstantial speech, occasional panic attacks," <u>or</u> moderate difficulty in social, occupational, or school functioning, such as "few friends, conflicts with peers or co-workers."  DSM-IV-TR 34 (4th ed. text rev. 2000).

It is unclear whether Dr. Sacks's GAF score of 58 referred to "moderate symptoms" or to "moderate difficulty" in some type of functioning.  Regardless, Ninth Circuit cases make clear that GAF scores are not dispositive of disability or severity.  The court has stated in unpublished, decisions that the ALJ's failure to refer to GAF scores is not error because a GAF score does not have a direct correlation to the severity requirements in the Commissioner's mental disorder listings and thus, it does not establish disability.  <u>Doney v. Astrue</u>, 485 F. App'x 163, 165 (9th Cir. 2012) (citing <u>McFarland v. Astrue</u>, 288 F. App'x 357, 359 (9th Cir. 2008)).

And, in published opinions, the court notes the relevance of GAF scores but still holds that they are not controlling of disability.  <u>Garrison v. Colvin</u>, 759 F.3d 995, 1002 n.4 (9th Cir. 2014) ("GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability" but "they may be a useful measurement" because they are "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment.").

Here, the ALJ considered Dr. Sacks's opinion, which was based on as single examination, but determined that the GAF score of 58 had little probative value because it was inconsistent with the normal mental status examination.  Because the score, by itself, is not determinative of

severity or disability and the ALJ gave a specific, clear and convincing reason supported by the record to reject the relevance of that score, the ALJ did not err by finding that Dr. Sacks's report did not establish a severe mental impairment. See Gutierrez v. Astrue, No. 12-cv-1390-MEJ, 2013 WL 2468344, at *19 (N.D. Cal. June 7, 2013) ("A GAF score of 50 does not necessarily establish an impairment seriously interfering with the claimant's ability to perform basic work activities.").

Next, Plaintiff argues that the "weight of the evidence supports the conclusion that [her] mental impairments are severe and do have more than a minimal effect on her ability to perform basic work activities." Pl.'s Op. Brief at 6. But, aside from citing to Dr. Sacks's opinion, and in particular his diagnosis and GAF score, Plaintiff points to no other evidence in the record to support her contention. Id.[1]

Finally, she contends that the ALJ erred at step two because he improperly relied on the non-examining agency psychologists' opinions that she had no severe mental impairment. She argues that non-examining advisors' testimony cannot itself constitute substantial evidence warranting the rejection of a treating or examining practitioner's opinion. Hill v. Astrue, 698 F.3d 1153, 1160 (9th Cir. 2012) ("'The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.'") (quoting Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996)).

Plaintiff again misreads the ALJ's opinion. The ALJ did not rely on the non-examining psychologists' and psychiatrist's opinions to reject Dr. Sacks's opinion. The ALJ provided other

---

[1] Moreover, the ALJ did discuss Plaintiff's treating physicians' opinions later in his decision and offered reasons for giving them little weight. Tr. 44. Plaintiff makes no argument that the ALJ's rejections of their opinions was error.

reasons for giving Dr. Sacks's GAF score and opinion little weight.  The ALJ cited to the non-examining practitioners' opinions to support his finding that Plaintiff's anxiety disorder was not severe at step two.  "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Thus, while the non-examining practitioners' opinions cannot justify the rejection of a conflicting opinion by a treating or examining practitioner, the non-examining practitioners' opinions are substantial evidence when they are consistent with the other evidence in the record.  Here, the opinions of the non-examining practitioners were consistent with Plaintiff's normal mental status examinations and lack of mental health treatment.

Plaintiff's arguments that the ALJ erred at step two are without merit.  The ALJ's step-two finding that Plaintiff's anxiety disorder is not a severe impairment was not in error and is supported by substantial evidence in the record.

## II.  Other Arguments

Plaintiff contends that the ALJ erred at step four by finding that she can return to her past relevant work as a travel agent because, Plaintiff argues, the ALJ improperly rejected doctors' opinions regarding her mental and physical limitations.  Plaintiff's argument focuses on the ALJ's failure to include any mental limitations in her RFC and specifically, the alleged failure to properly assess Dr. Sacks's opinion.  She again contends that the ALJ erred in giving Dr. Sacks's opinion little probative value.  She cites to his diagnosis and GAF score of 58.  For the reasons explained above, however, the ALJ did not err in assigning little weight to Dr. Sacks's diagnosis and GAF score.  While Plaintiff argues that the ALJ's determination that she has no mental

limitations is against the weight of the opinion evidence, the only evidence she relies on is Dr. Sacks's opinion which the ALJ properly analyzed.  She further contends that her past relevant work as a travel agent is skilled work which is inconsistent with the mental limitation given to her by Dr. Sacks.  For the reasons previously explained, this argument is unavailing.

Finally, Plaintiff argues that if appropriate consideration is given to her non-exertional mental limitations, the Medical-Vocational Guidelines dictate a finding of disability.  This argument is premised on a conclusion that the ALJ erred in finding Plaintiff's mental impairments to be nonsevere.  As discussed, the ALJ did not err and this argument is rejected.

CONCLUSION

The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this _____ day of _____, 2016

Marco A. Hernandez
United States District Judge

13 - OPINION & ORDER